IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL NAWROCKYJ,<br><br>    Plaintiff,<br><br>  v.<br><br>COUNTY OF ERIE, PENNSYLVANIA,<br><br>ELIZABETH HIRZ, individually and<br>in her official capacity as<br>Erie County District Attorney,<br><br>    Defendants. | CIVIL ACTION NO. |

## COMPLAINT

Plaintiff Michael Nawrockyj files this Complaint against Defendants County of Erie, Pennsylvania ("Erie County") and Elizabeth Hirz, individually and in her official capacity as Erie County District Attorney ("Erie County DA") seeking relief pursuant to the First Amendment to the United States Constitution and the Pennsylvania Whistleblower Law ("WBL" – 43 P.S.§§ 1421 *et seq*.) for the hostility, discrimination, and retaliation he was subjected to while working for the Erie County DA's Office.

## PRELIMINARY STATEMENT

1.      Section 1983 actions are routinely used to police the actions of law enforcement officers around the nation. This is not one of those actions, but instead, an attempt to vindicate a law enforcement officer who tried to stop waste and wrongdoing within the Erie County DA's Office.

2.      Plaintiff Michael Nawrockyj is a career law enforcement officer who has dedicated his life to serving the citizens of the Erie community. As a citizen, Nawrockyj believed that his duties to the Erie community included advocating about matters of public concern, which

1

included speaking up about issues which negatively impacted the day-to-day operations of the Erie County DA's Office.

3. While working as a County Detective with the Erie County DA's Office, Nawrockyj uncovered matters of public concern, such as the Office's inability to recruit and retain experienced detectives, inadequate pay, violations of federal law, and issues of self-dealing between union leaders and county officials.

4. Nawrockyj was fired by Defendants because he refused to standby and do nothing while these matters of public concern continued to plague the Erie County DA's Office.

5. Nawrockyj is filing this action to expose the reasons behind his retaliatory firing and to pursue meaningful change within the Erie County DA's Office so that current and future employees can notify the citizens of Erie about matters of public concern which impact public safety, without fear of reprisal.

6. Nawrockyj is seeking a declaratory judgment and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2022, 42 U.S.C. §§ 1983 and 1988. Nawrockyj is also pursuing compensatory damages, attorneys' fees and costs, and all other relief available under 42 U.S.C. §§ 1983 and 1988.

## THE PARTIES

7. Nawrockyj is an adult individual who resides in Erie, Pennsylvania. Nawrockyj is a "citizen of the United States" as defined by 42 U.S.C. § 1983.

8. Defendant Erie County is a municipality organized pursuant to the laws of the Commonwealth of Pennsylvania. In 1976, voters in Erie County voted to adopt a Home Rule Charter form of government. On January 1, 1978, the Erie County Home Rule Charter went into effect, and the Charter became the basic law of Erie County.

9.      At all relevant times, Defendant Erie County was a "person" within meaning of 42 U.S.C. § 1983, with the authority to sue and be sued. The Erie County DA's Office is an office within Erie County and is subject to the provisions of the Erie County Home Rule Charter.

10.      At all relevant times, Defendant Erie County was an "employer" and "a public body" within the meaning of the WBL and is accordingly subject to the provisions of the WBL.

11.      Defendant Hirz is currently the Erie County DA. As DA, Defendant Hirz is the chief law enforcement officer for Erie County and has been primarily responsible for the management of the Erie County DA's Office's day-to-day operations.

12.      At all times relevant, Defendant Hirz acted under color of state law and is a "person" within meaning of 42 U.S.C. § 1983, subject to liability for violations of the First and Fourteenth Amendments to the United States Constitution.

## JURISDICTION AND VENUE

13.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that Nawrockyj's claims arise under the laws of the United States and Nawrockyj seeks redress for violations of federal laws. The Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367, because such claims are so closely related to Nawrockyj's federal claims that they form part of the same case or controversy.

14.      Venue is proper in this district pursuant to 28 U.S.C. § 1391, as Defendant is located within the Western District of Pennsylvania and a substantial part of the events and omissions giving rise to this action occurred within the Western District of Pennsylvania.

## FACTUAL BACKGROUND

**A.    Erie County and its Home Rule Government**

15.    In Pennsylvania, Home Rule permits municipalities to transfer the basic authority to act in municipal affairs from Pennsylvania law to a local charter that is drafted, adopted and amended by the municipal voters.

16.    Erie County's Home Rule Charter took effect on January 1, 1978, and it sets forth the basic law of Erie County. As part of the change to Home Rule governance, Erie County shifted from a county commissioner system to an executive-legislative form of government (*i.e.*, Erie County Executive and Erie County Council).

17.    The powers and responsibilities of the Erie County Council and County Executive are set forth in Erie County's Home Rule Charter and corresponding Administrative Code, and those documents specify that the Erie County Council ("County Council") shall act as Erie County's legislative, appropriating, and policy-determining body, and the Erie County Executive ("County Executive"), shall manage the administrative functions for the County.

18.    However, many of the day-to-day operations of Erie County are delegated to and handled by a variety of Erie County Administrative Departments and Offices. Currently, there are twelve Administrative Departments (Departments of Corrections, Finance, Human Resources, Human Services, Law, Library Services, Operations, Planning, Public Defender, Public Health, Public Safety, and Veteran Affairs) and five Offices (Offices of Clerk of Records, Controller, Coroner, District Attorney, and Sheriff) within the Erie County government.

19.    The Erie County Administrative Departments are led by Directors, who are appointed by the County Executive.

20.     The Erie County Offices, which include the Erie County DA's Office, are led by Officers who are elected by the voters of Erie County.

21.     The powers and responsibilities of Erie County's Administrative Department Directors and Officers are detailed within Erie County's Home Rule Charter and Administrative Code.

**B.     Erie County District Attorney's Office**

22.     The Erie County DA is vested with the authority to investigate and prosecute all state law crimes that occur within the county by Erie County's Home Rule Charter and Administrative Code.

23.     To support its mission, the Erie County DA's Office employs Assistant District Attorneys, County Detectives, and support staff.

24.     As the head of the Erie County DA's Office, the DA has the authority to hire and fire the Assistant District Attorneys and County Detectives. The remaining terms and conditions of employment (*e.g.*, pay, pay increases) for Erie County DA's Office's employees are determined by the provisions of Erie County's Personnel Code.

25.     However, at all relevant times, the Erie County Detectives Association (union for the County Detectives) has been party to a collective bargaining agreement ("CBA") with the County of Erie.

26.     The CBA outlines all the terms and conditions of employment for County Detectives who work for the Erie County DA's Office. For example, Article 25 specifies the minimum and maximum wages for the following County Detective positions within the Erie County DA's Office: Chief County Detective, Deputy Chief, Lieutenant, Detective Sergeant, Class "A" Detective, Class "B" Detective, and Class "C" Detective.

27.    The CBA also details the progressive discipline policy which must be followed before a County Detective is either disciplined or fired.

28.    Nawrockyj is initiating this legal action to address his retaliatory suspension and firing by Defendants, which occurred after he submitted a formal letter to Defendants which detailed matters of public concern, including rampant corruption, issues of self-dealing by County employees, poor staffing, inadequate compensation, and officer safety issues.

**C.    Union's Hostility Towards Nawrockyj**
**Because of His Persistent Advocacy on Matters of Public Concern**

29.    In 2018, Nawrockyj and a coworker, Todd Manges, began raising matters of public concern to Matthew Benacci and Joseph Spusta, who were officers and leaders of the Erie County Detectives Association ("County Detectives Union"), as they were bargaining over the terms and conditions of the next CBA.

30.    Specifically, Nawrockyj informed Benacci and Spusta that Erie County had previously failed to pay the contractually agreed upon cost-of-living adjustments ("COLA") to all County Detectives that were set forth in the CBA. As a result, Nawrockyj noted that base salaries for County Detectives had not been properly adjusted and were subsequently suppressed for years leading to woefully inadequate pay rates for County Detectives which resulted in staff retention issues; inability of the DA's Office to recruit experienced detectives; and threat to safety of DA personnel when they were engaging in law enforcement activities because many detectives had little to no field experience prior to joining the Erie County DA's Office.

31.    Union officers like Benacci, Spusta, and John Reddinger ("Unscrupulous Three") denied that Erie County had failed to previously pay COLA and/or adjust base salaries in accordance with the terms of the CBA over multiple contracts. They remarked, this is just what the County does.

6

32.     Over the next few years, Nawrockyj continued to press the Unscrupulous Three about Erie County's failure to reflect COLA in the CBA for past contracts, which resulted in inadequate pay and pay deficiencies for all County Detectives, including himself and Manges. Each time, the Unscrupulous Three rebuffed Nawrockyj's attempt to discuss or address this issue.

33.     Eventually, Nawrockyj's efforts to address the COLA issue with the Unscrupulous Three resulted in hostility and retaliatory acts, which included multiple incidents during which Reddinger failed to provide backup to Nawrockyj and Manges when arresting an armed suspect; multiple incidents during which Reddinger failed to follow established field procedures when dealing with suspects, which exposed Nawrockyj and Manges to harm; constant and repeated yelling by the Unscrupulous Three at Nawrockyj at work; and disparaging comments made by the Unscrupulous Three about Nawrockyj and Manges to community members and law enforcement members in the area.

34.     Defendant Erie County was aware of the hostility and retaliatory acts Nawrockyj endured from the Unscrupulous Three and did nothing to address or correct those issues.

**D.     Nawrockyj's Discovery of Accepted Custom of**
**<u>Self-Dealing between Union Leaders and Erie County</u>**

35.     During the summer of 2025, two union officers stepped down from their leadership positions within the County Detectives Union. In January 2026, Nawrockyj and Manges were elected to fill those union officer positions; Nawrockyj became Vice President and Manges became Secretary/Treasurer.

36.     When Nawrockyj and Manges became union officers, they had access to information and resources they previously did not, including information about prior CBA

negotiations, the COLA issue, and how inadequate the salaries were for nearly all County Detectives.

37.     In addition, Nawrockyj and Manges uncovered numerous issues involving the Unscrupulous Three and other union officials, including potential violations of the National Labor Relations Act ("NLRA") and evidence of self-dealing relating to increased compensation for Benacci and Spusta at the expense of other union members.

38.     In late January 2026, Nawrockyj and Manges met with Benacci to discuss the COLA issue and inadequate salaries for the County Detectives. During this meeting, Nawrockyj and Manges demanded transparency from Benacci on these issues. In response, Benacci admitted that during prior CBA negotiations, the Unscrupulous Three did not represent the interests of all members of the County Detectives Union. Benacci went on to state to Nawrockyj and Manges, "[r]ight or wrong, we made a conscious effort to not fight for the new guys."

39.     Nawrockyj and Manges were stunned by Benacci's admission that the union failed to adequately represent the interests of its members. During the following weeks, Nawrockyj and Manges continued to press Benacci about his admission and stated that if the union did not take action to correct their past actions, they would. In response, Benacci dared them to sue the union.

40.     On February 5, 2026, the Erie Times-News published an article which listed the highest paid county employees in 2026. Two members of the Unscrupulous Three, Spusta and Benacci, were ranked #5 and #6 on that list. See A.J. Rao, "Which Erie County, Pa. employees will earn the most in 2026?", Erie-Times News, February 5, 2026, https://www.goerie.com/story/news/local/2026/02/05/erie-county-government-largest-salaries/88415957007.

41.    After the article was published, Spusta and Benacci would call each other "number 5" and "number 6" whenever they were in the office.

42.    Nawrockyj used the Erie-Times News article as another opportunity to discuss inadequate pay issues with Benacci. Benacci revealed to Nawrockyj and Manges that he and Spusta had previously negotiated with Erie County outside of bargaining and insinuated that they both had personally benefitted from those interactions with Erie County officials. Benacci then joked about his high salary, indicated that he previously went to the County twice to ask for a buyout because he was making too much money, and opined whether Erie County would now give him and Spusta an early retirement buyout because of their high salaries.

43.    Undeterred by the self-dealing actions of Benacci and Spusta, Nawrockyj and Manges worked to address inadequate pay issues for County Detectives (specifically Class C, Class B, and Class A County Detectives), which included creating proposals to increase the pay for those Class C through Class A County Detectives in the next CBA.

44.    In March 2026, Nawrockyj and Manges met with Benacci, who was representing the Executive Board, to discuss bargaining strategy for the upcoming CBA negotiations. It was during this period that Benacci presented Nawrockyj and Manges with a pay proposal devised by Benacci and Spusta in which the Unscrupulous Three and other County Detectives would receive salary increases as part of the next CBA. The two County Detectives who would not receive pay increases were Nawrockyj and Manges.

45.    Nawrockyj confronted Benacci about his and Spusta's pay increase proposal and threatened to report them to the DA for engaging in corruption and other illegal acts. In response, Benacci began yelling at Nawrockyj and told him "to take a hike" and "get to f*cking stepping."

46. Instead of escalating tensions with Benacci, Nawrockyj and Manges continued to work on ways to increase pay for the County Detectives. It was during this period that Nawrockyj and Manges uncovered additional information about Benacci and Spusta's compensation and how they benefitted from self-dealing with Erie County. For instance, whenever Benacci and Spusta reached their maximum allowable base salaries as County Detectives, they negotiated with Erie County officials to have their maximum limits raised. Benacci even commented that he and Spusta were working with Erie County officials to have his current maximum base salary limit raised by $4,000.

47. Upon information and belief, Benacci and Spusta had an arrangement with Erie County officials upon which they agreed to forego bargaining on certain issues like COLA, increased starting pay, and pay compression issues for County Detectives in exchange for increased base salaries for themselves. Benacci and Spusta would also receive increased post-employment benefits from these self-dealing raises as their pension payments were directly tied to their three highest years of compensation as a county employee.

48. Upon information and belief, negotiations between Erie County and Benacci and Spusta, outside of collective bargaining, became an accepted custom for Erie County due to the frequency of their occurrence and because it resulted in the suppression of salaries and other benefits that County Detectives would ordinarily be owed by Erie County.

E. **Unscrupulous Three's Relationship with the Erie County DA**

49. Defendant Hirz began with the Erie County DA's Office in 2002 as an Assistant District Attorney. In 2013, Defendant Hirz was promoted to First Assistant District Attorney by former DA Jack Daneri.

50.     During her time as First Assistant District Attorney, Defendant Hirz developed a close relationship with the Unscrupulous Three. In fact, Spusta openly bragged to other County Detectives that whenever Defendant Hirz became Erie County DA, he would eventually be appointed Chief County Detective by her.

51.     In December 2021, Defendant Hirz was appointed Erie County DA after DA Jack Daneri resigned. In 2022, Defendant Hirz won her election to remain as Erie County DA for a four-year term.

52.     When Defendant Hirz became Erie County DA, the Unscrupulous Three enjoyed benefits that other employees did not because they had a close relationship with the District Attorney. For instance, whenever Reddinger and Spusta had an issue with orders given by their former boss, Chief County Detective Mark Schau, they would go to Defendant Hirz directly and have those orders overruled.

53.     The Unscrupulous Three's relationship with Defendant Hirz emboldened how they acted at work. For example, Benacci openly told other coworkers that Nawrockyj needed to be removed because he was a threat. Benacci also openly discussed getting rid of Chief County Detective Schau. The Unscrupulous Three bragged to others about how much better the office would be without Nawrockyj, Manges, and Schau.

54.     As a result of the Unscrupulous Three's close relationship with Defendant Hirz, Nawrockyj believes that he was targeted for firing after he threatened to report the Unscrupulous Three and Erie County officials to Defendant Hirz for engaging in illegal activities. In addition, since Nawrockyj's firing, Chief Schau has resigned, Spusta has been appointed Chief County Detective, Benacci has been elevated to Deputy Chief, and Reddinger became Vice-President of the Union (Nawrockyj's former elected role).

11

**F.    Defendants' Retaliatory Termination of Nawrockyj's Employment**

55.    On April 21, 2026, Nawrockyj and Manges wrote a letter to Benacci and Spusta, asking for salary information from other law enforcement agencies in the area (and any other data addressing inadequate pay and pay compression issues), to present to Erie County during bargaining. The requested data included any justification for Benacci and Spusta's inflated salaries, which resulted in suppressing salaries for other County Detectives, including Nawrockyj and Manges. Benacci and Spusta refused to turn over any of these requested materials.

56.    On May 4, 2026, the County Detectives Union had an Executive Board meeting. During that meeting, Nawrockyj brought up his long-standing concerns of inadequate pay for County Detectives, self-dealing by Benacci and Spusta, and other illegal activity by the Unscrupulous Three. In response, Benacci lost control and began yelling at Nawrockyj. Benacci then stormed out of the room and continued to yell at Nawrockyj in front of staff and members of the public.

57.    On May 5, 2026, Chief County Detective Shau met with Nawrockyj and issued him a formal warning letter regarding "Inappropriate Workplace Conduct." The letter specifically addressed Nawrockyj's alleged part in the May 4th incident involving Benacci. Chief Schau characterized this letter as a "formal warning" and stated that "[f]uture similar incidents may result in disciplinary action." During their meeting, Chief Shau told Nawrockyj that Benacci would also be receiving discipline due to his involvement in the May 4th incident.

58.    Later that day, Nawrockyj wrote a letter to Chief Schau, outlining some of the matters of public concern he had previously raised, including inadequate pay for County Detectives, allegations of self-dealing by Benacci, Benacci's admission that he had not represented all members of the union, and retaliatory acts by the Unscrupulous Three (who were

sergeants, senior County Detectives, and past and present union officials) after Nawrockyj reported corruption and other wrongdoing within the DA's Office. Nawrockyj signed off on his letter as Executive Board Vice President of the County Detectives Union.

59.     On May 6, 2026, Nawrockyj handed the letter above to Chief Schau and discussed the content of the letter with Chief Schau. Chief Schau promised that he would deliver Nawrockyj's letter to Defendant Hirz.

60.     On May 7, 2026, Erie County Human Resources notified Nawrockyj that they were placing him on paid administrative leave and conducting an "internal investigation." Erie County Human Resources did not tell Nawrockyj what he was being investigated for.

61.     On May 11, 2026, Nawrockyj was interviewed by Erie County Solicitor Julia Herzing regarding the May 4th incident. During this interview Nawrockyj informed Solicitor Herzing, Erie County Human Resources Director Kyle Shoulders, and Deputy Director Amanda Cypher that Chief Schau had already issued him written discipline for this incident. Solicitor Herzing, Director Shoulders, and Deputy Director Cypher claimed to have no knowledge of Chief Schau's letter of discipline and stated that prior discipline had no relevance to their investigation.

62.     On May 21, 2026, Erie County forced Nawrockyj to attend a meeting during which they presented him with an oral recitation of their investigation findings. During this meeting, Erie County accused Nawrockyj of poor relationships with coworkers despite no prior disciplinary write-ups and consistently positive job performance evaluations throughout his career, which included positive ratings for workplace relations. Erie County cut the meeting short because Defendant Hirz had another appointment to attend. At the end of the meeting, Erie County informed Nawrockyj that this meeting would serve as his *Loudermill* Hearing.

13

63.     Prior to May 21, 2026, Erie County never notified Nawrockyj nor his counsel that this forced meeting would constitute his *Loudermill* Hearing.

64.     On May 22, 2026, Defendant Hirz sent Nawrockyj a letter which stated that the termination of his employment with Erie County was effective immediately.

65.     Upon information and belief, Defendants have never disciplined a law enforcement officer for having an argument with a coworker.

66.     Upon information and belief, Defendants have never terminated the employment of a law enforcement officer for having an argument with a coworker.

67.     Upon information and belief, the stated reasons for the termination of Nawrockyj's employment were pretext as Nawrockyj's firing was due to his persistent advocacy on matters of public concern.

68.     By terminating Nawrockyj's employment, Defendants failed to apply its workplace policies in a uniform and fair manner to all its employees.

69.     By terminating Nawrockyj's employment, Defendants failed to abide by the terms of the CBA.

## STATEMENT OF CLAIMS

### COUNT I
42 U.S.C. § 1983 – Retaliation in Violation of Plaintiff's Rights to Free Speech
Pursuant to the First and Fourteenth Amendments to the United States Constitution
(Plaintiff v. all Defendants)

70.     Nawrockyj incorporates by reference the allegations in Paragraphs 1 through 69, as if fully set forth herein.

71.     The right of Nawrockyj to speak freely about matters of public concern is protected by the First Amendment and Fourteenth Amendments to the United States

14

Constitution. The public has a vital interest in free and open discussion on issues of public importance.

72.     It is a violation of the First Amendment and Fourteenth Amendment of the United States Constitution for public employers, including Defendants, to discriminate against, discipline, and terminate the employment of its employees in retaliation for engaging as a private citizen in speech about matters of public concern.

73.     In his capacity as a union member, Nawrockyj raised concerns to Chief Schau, Defendant Hirz, and other Erie County officials about issues concerning inadequate pay for County Detectives; insufficient staffing; inability to recruit experienced law enforcement officers; self-dealing by union officers which constrained the DA Office's budget; retaliatory conduct by County Detectives; and other issues affecting the day-to-day operations of the Erie County DA's Office. These issues that Nawrockyj raised to Defendants are matters of public concern, and Nawrockyj's right to speak out about such issues are protected by the First Amendment and Fourteenth Amendments to the U.S. Constitution.

74.     Defendants retaliated against Nawrockyj for advocating on matters of public concern. In doing so, Defendants harmed Nawrockyj for engaging in activity protected by the First and Fourteenth Amendments' guarantee of the rights of speech.

75.     Such conduct by Defendants was done in a knowing, willful, wanton, reckless, and bad faith manner, which violates clearly established constitutional provisions and rights which a reasonable person would have known.

76.     As a direct, foreseeable, and proximate result of Defendants' unlawful conduct, Nawrockyj has suffered, and continues to suffer, economic injury, harm to his reputation, humiliation, embarrassment, discomfort, and other injuries and irreparable harm.

15

77.    Under 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Thus, Defendants are fully liable to Nawrockyj for his injuries resulting from Defendant's retaliating against him in violation of the First and Fourteenth Amendments.

78.    Defendants are also liable for Nawrockyj's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT II
Violations of the WBL
(Plaintiff v. Defendant Erie County)

79.    Nawrockyj incorporates by reference the allegations in Paragraphs 1 through 78, as if fully set forth herein.

80.    By the actions described above, among others, Defendant Erie County retaliated against Nawrockyj by terminating his employment one day after he sent a formal letter about issues of waste and wrongdoing within the Erie County DA's Office.

81.    As a direct and proximate result of Defendant Erie County's unlawful conduct in violation of the WBL, Nawrockyj has suffered, and continues to suffer, economic injury, harm to his reputation, humiliation, embarrassment, mental anguish, emotional distress, discomfort, and/or other injuries and irreparable harm for which he is entitled to an award of monetary damages, special damages, and other relief.

**REQUESTS FOR RELIEF**

Accordingly, Nawrockyj requests that this Court enter judgment on his behalf and enter an order directing the award of other relief, as follows:

A.      Declaring that Defendants unlawfully violated Nawrockyj's rights and privileges secured by the First and Fourteenth Amendments to the United States Constitution;

B.      Entering a permanent injunction restraining and preventing Defendants from continuing to violate their obligations under the United States Constitution with respect to Nawrockyj and all other persons similarly situated, such as Todd Manges;

C.      Ordering Defendants to rescind the retaliatory, discriminatory, and otherwise unlawful discipline they issued Nawrockyj;

D.      Ordering Defendants to rescind the retaliatory, discriminatory, and otherwise unlawful decision to terminate Nawrockyj's employment;

E.      Ordering a complete and accurate accounting of all the compensation and relief to which Nawrockyj is entitled;

F.      Awarding Nawrockyj back pay, front pay, lost benefits, and other emoluments of employment and such other relief as is necessary to make him whole;

G.      Awarding Nawrockyj compensatory damages for pain, humiliation, and damage to reputation;

H.      Awarding Nawrockyj punitive damages to redress the knowing, willful, wanton, reckless, and bad faith nature of Defendants' violation of Nawrockyj's Constitutional rights;

I.      Award Nawrockyj punitive damages to redress the knowing, willful, wanton, reckless, and bad faith nature of Defendants' wrongful discharge of Nawrockyj for acts supported by public policy;

17

J.       Awarding Nawrockyj attorneys' fees and costs;

K.       Awarding Nawrockyj any other relief to which he is entitled and/or which this Court deems necessary and proper.

**A jury trial is demanded for all claims triable by jury.**

Respectfully submitted,

/s/ Sammy Sugiura
Sammy Y. Sugiura
Greenberg Gross LLP
1650 Market Street, Suite 3600,
Philadelphia, PA 19103
SSugiura@GGTrialLaw.com

**Counsel for Plaintiff**